United States District Court
Southern District of Texas
FILED

JUL 16 1990

Jesse E. Clark, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JERRY KRIM on behalf of     :
himself and all others     :
similarly situated,     :
         Plaintiff,     :
    :
v.     :    CIVIL ACTION NO.
    :    _____
FIRST CITY BANCORPORATION     :
OF TEXAS, INC., A. ROBERT     :    H 90 - 226
ABBOUD, ROBERT H. ALLEN,     :
J. EVANS ATTWELL, WILLIAM T.     :
BUTLER, M.D., FRANK C. CIHAK,     :
J.A. ELKINS, JR., JAMES H.     :
EVANS, C. JACKSON GRAYSON,     :    JURY TRIAL DEMANDED
JR., ROBERT N. MURRAY,     :
RALPH S. O'CONNOR, ROBERT D.     :
RICHLEY, MARGARET S. WILSON,     :
ROBERT RICE, WILLIAM M.     :
ARNOLD and DONALDSON, LUFKIN     :
& JENRETTE SECURITIES     :
CORPORATION,     :
         Defendants.     :

CLASS ACTION COMPLAINT

Plaintiff Jerry Krim, on his own behalf and as class representative of those similarly situated, hereby sues defendants First City Bancorporation of Texas, Inc. ("First City"), A. Robert Abboud, Robert H. Allen, J. Evans Attwell, William T. Butler, M.D., Frank C. Cihak, J.A. Elkins, Jr., James H. Evans, C. Jackson Grayson, Jr., Robert N. Murray, Ralph S. O'Connor, Robert D. Richley, Margaret S. Wilson, Robert Rice, William M. Arnold, and Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ"). For his cause of action, plaintiff alleges on information and belief, except for

1

ClibPDF - www.fastio.com

Paragraph 8 which is alleged on personal knowledge, the following:

<u>Preliminary Statement</u>

1.   This is a class action seeking compensatory and punitive damages from defendants for violations of federal securities laws and pendent state law claims arising out of the false and misleading statements made by defendants concerning First City at the time of its "restructuring" in early 1988, and thereafter, and the continued financial deterioration of First City following that "restructuring".

2.   The Annual Reports of First City for the years 1988 and 1989, issued after the "restructuring," as well as the Prospectus/Proxy statement dated January 26, 1988 issued in connection with that "restructuring," deceived Plaintiff, the Plaintiff Class and the investing public by failing to reveal the precariousness of First City's financial condition even after the restructuring, understating its projected loan losses and failing to disclose crucial facts about its loan portfolio, and, both at the time of the restructuring and subsequent to that time, making optimistic statements concerning First City's financial condition which were not supportable by the facts then known to or available to defendants by reasonable investigation.

3.   Specifically, Defendants, among other things, (a) failed to disclose in either of its 1988 or 1989 Annual Reports or the Prospectus/Proxy Statement the true extent to which its

2

ClibPDF - www.fastio.com

loan portfolio, and therefore its financial condition, was dependent on high risk loans arising from leveraged buy-outs based on inflated cash flow projections; (b) materially misrepresented that "First City was one of the strongest financial service organizations in the region with...a low level of nonperforming assets..." when, in fact, the bank was not reporting substantial nonperforming assets; (c) falsely stating that the proposed capital restructuring would have a material effect in enhancing First City's future profitability and that the loan practices of the restructured Bank would be substantially less risky, when, in fact, the Bank increased its high risk loans subsequent to the restructuring, and the profitability of the Bank remained fundamentally dependent on the performance of these loans.

4.   As a result of these and other false and misleading statements, Plaintiff and the Plaintiff Class of all persons who purchased First City stock or rights at any time from April 20, 1988 to July 3, 1990, while this information was being disseminated and those who purchased shares or rights issued pursuant to the Prospectus/Proxy statement dated January 26, 1988, were misled as to First City's true financial condition and future prospects, and suffered substantial damages for which they seek to recover in this action.

## Jurisdiction and Venue

5.   Count I of this Complaint arises under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange

3

ClibPDF - www.fastio.com

Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the Securities and Exchange Commission ("SEC"). Count II of this Complaint arises under Sections 11, 12(2) and 15 of the Securities Act of 1933. This Court has jurisdiction of this action under Section 22 of the 1933 Act, 15 U.S.C. § 77v and Section 27 of the Exchange Act, 15 U.S.C. 78aa.

6. This Court has pendent jurisdiction of Counts III and IV which allege violations of Texas statutory law and common law fraud, under principles of pendent jurisdiction.

7. Each of the defendants resides within or has his or its principal place of business within the Southern District of Texas or transacts business therein. Acts and transactions herein alleged to constitute the violations of the Exchange Acts, Texas statutory law, and the common law occurred in substantial part within the Southern District of Texas. In connection therewith, Defendants used, directly and indirectly, the means and instrumentalities of interstate commerce, the United States mails and the facilities of a national securities exchange and markets. Accordingly, venue is proper under 28 U.S.C. §1391 (b) and (c).

## The Parties

8. Jerry Krim is a resident of Arlington, Virginia. Plaintiff Krim purchased shares of common stock of First City in 1988 after April 20, 1988, during the time the Proxy Statement/Prospectus was being disseminated, and owned those

4

ClibPDF - www.fastio.com

shares when First City announced its financial restructuring had been completed.

9. Defendant First City is a bank holding company organized in 1988 under the laws of Delaware and maintains its principal offices at 1001 Main Street, Houston, Texas 77002. It does substantial business through its subsidiaries in the Southern District of Texas. First City may be served with process by serving anyone at its principal offices from cashier up to the president.

10. A. Robert Abboud is Chairman of the Board of Directors and Chief Executive Officer of First City and the Lead Bank and may be served with process at its offices at 1001 Main Street, Houston, Texas 77002.

11. Robert D. Richley is President, Chief Operating Officer and a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

12. Frank C. Cihak is Vice Chairman, Secretary and a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

13. Robert Rice is Executive Vice President and Chairman of the Credit Policy Committee of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

ClibPDF - www.fastio.com

14. William M. Arnold is Executive Vice President of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

15. Robert H. Allen is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

16. J. Evans Attwell is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

17. William T. Butler, M.D. is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

18. J. A. Elkins, Jr. is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

19. James H. Evans is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

20. C. Jackson Grayson, Jr. is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

21. Robert N. Murray is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

22. Ralph S. O'Connor is a Director of First City. He may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

23. Margaret S. Wilson is a Director of First City. She may be served with process at the office of First City, 1001 Main Street, Houston, Texas 77002.

24. DLJ is a Delaware corporation. It may be served with process at its offices at c/o CT Corporation System, 350 North St. Paul, Dallas, Texas 75201.

## Class Action Allegations

25. a.   Jerry Krim brings this action pursuant to Rules 23(a) and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of a class (the "Class") consisting of all persons who purchased First City equity securities or rights at any time between April 20, 1988 and the date of filing this Complaint (the "Class Period"), and the subclass, on Count II consisting of all persons who purchased equity securities or rights between January 26, 1988, the date of the Proxy Statement/Prospectus and completion of restructuring. Excluded from the Class are the named Defendants, members of the immediate family of each Defendant, any equity in which any of the Defendants has a controlling interest, and the legal representatives, heirs, successors, predecessors in interest, or assigns, of any of the Defendants.

b.   First City stock is traded on the New York Stock Exchange. As of December 31, 1989, First City had 18,146,271

7

shares of Common Stock outstanding, and thousands of its shares are traded every day. Accordingly, the members of the Class are so numerous that joinder of all members is impractical.

c. Plaintiff's claims are typical of the claims of the members of the Class in that he purchased equity securities of First City during the Class Period at artificially inflated price and sustained damages as a result.

d. Plaintiff will fairly and adequately protect the interests of the members of the Class; he has retained competent counsel experienced in class and securities litigation to further insure such protection; the claims asserted on behalf of the Class are typical of the claims of all members of the Class, and the Plaintiff has no interests which are antagonistic to or in conflict with the interests of those he represents.

e. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. It would be impractical and undesirable for each member of the Class who has suffered harm to bring separate actions in various parts of the country; and, in addition, the bringing of such actions would put substantial and unnecessary burden on the courts, while this Court can determine the rights of all Class members with judicial economy.

26. Plaintiff does not contemplate any difficulty in the management of the Class Action in this forum and the Class Action method is superior to any other available means for the

8

fair and efficient adjudication of the controversy herein.  The common questions of law and fact predominate over any questions affecting only individual members.  The common questions of law and fact which predominate among others include:

a.    Whether Defendants filed and issued false and misleading annual reports and prospectus/proxy statements.

b.    Whether Defendants violated Section 10(b) of the 1934 Act and Rule 10b-5 promulgated thereunder.

c.    Whether Defendants violated Sections 11 and 12(2) of the Securities Act of 1933.

d.    Whether the acts and omissions of the Defendants constitute common law fraud.

e.    Whether the acts and omissions of the Defendants constitute violations of Texas statutory law.

f.    The extent of damages sustained by Plaintiff and the Class, and the proper measure of damages.

### Background Facts

27.  On or about January 26, 1988, First City announced a "proposed reorganization" which, among other things, was allegedly intended to increase First City's profitability and return it to viable financial status.  As finally consummated in April 1988, that Plan involved sale of all the assets (with liabilities) of First City to a new entity, New First City.  In exchange, Notes in the aggregate principal amount of $970 million by the Federal Deposit Insurance Corp. to the subsidiaries of First City.  New First City would become the

9

successor in interest to First City, and First City's shareholders would receive a substantially diminished interest (1/100 share of New First City for each share of First City Common Stock) in New First City.

28. Prior to the restructuring First City had taken large provisions for loan losses, had lost substantial amounts of money and had negative shareholder equity. Relying upon statements and omissions by the Defendants in its 1988 and 1989 Annual Reports, and in the Proxy Statement/Prospectus issued in connection with the restructuring, in particular, the statements set forth in paragraphs 29 through 33 below, and upon the integrity of the marketplace, whose pricing of First City stock was distorted by those same statements, the investing public was misled to believe that as a matter of fact, New First City would pursue a more conservative lending strategy, and that it would not experience problems with non-performing loans of the same relative magnitude as those it had previously experienced. The investing public was similarly misled to believe that the financial information presented by the Defendants contained reasonable and accurate statements of First City's financial position in accord with prudent accounting principles including an accurate presentation of its non performing loans and adequate provisions for loan losses.

29. In the 1988 and 1989 Annual Reports, which discussed the financial restructuring, Defendants failed to disclose the true extent to which its loan portfolio was composed of high

10

ClibPDF - www.fastio.com

risk loans to debt-laden companies who were having difficulties meeting cash flow projections and were therefore likely to become "non-performing assets." First City falsely and materially misrepresented that "the remaining risk in its loan portfolio is low relative to the competition generally." (See, 1988 Annual Report at page 29). In fact, at least four of its major borrowers, Drexel Burnham Lambert, Inc., Circle K, Federated Department Stores, Inc. and Garfinkle's, Inc., owing the Bank a collective $72.5 million, were on the brink of insolvency and later declared bankruptcy. Yet, some of these loans have not yet been placed on non-performing status. Additionally, in its 1988 Annual Report (at pp. 29-30), First City indicated that its core savings provided "more than adequate coverage" to absorb any volatility in its highly leveraged transactions ("HLT") portfolio. This representation was materially false and misleading as these transactions fueled an increase in non-performing assets thus decreasing net income. Additionally, by characterizing these loans as "HLT" instead of "LBOs" or leveraged buyouts, as is the practice in the industry, the Bank once again made materially false and misleading representations.

30. The 1988 Annual Report also materially misrepresented the effect of its risky investments. Instead of disclosing that substantial losses were likely due to such high risk, First City stated that entry into the "HLT" market should substantially enhance the result of its operations. (See, 1988

11

Annual Report, p. 30). In fact, non-performing assets increased dramatically thus causing a decrease in net income.

31. The 1988 Annual Report also falsely stated that "Management of First City believes the allowance for loan losses at December 31, 1988 was adequate to cover expected losses based on economic circumstances known or anticipated at that time." (pg. 32). This statement was materially misleading in that it gave the impression that the allowance for loan losses was adequate to cover reasonably anticipated losses from bad loans, when in fact, management either knew, or from reasonable investigation should have known, that the probable losses from bad loans, particularly the "HLT" portfolio, far exceeded the allowance for loan losses listed as of that date.

32. The 1989 Annual Report did nothing to dispel the false impressions created by the prior public statements of the Company set forth in the paragraphs above and indeed, repeated and added to many of them.

33. The Defendants made material false representations knowingly, recklessly and/or negligently. In reliance upon the Defendant's false representations and in reliance upon the integrity of the marketplace that was distorted by their misrepresentations and nondisclosures, the Class purchased First City securities at prices far in excess of their fair value.

34. Each of the Defendants is liable as a direct participant in, as a co-conspirator and as an aider and abettor

12

of the wrongs complained of herein. The individual Defendants, because of their positions of control and authority as operating officers and directors of First City controlled the contents of the Annual Reports and the Proxy Statements/Prospectus. Defendant DLJ operating as a financial advisor to First City and a major participant in the financial restructuring that was the subject of the Proxy Statement/Prospectus, was a "controlling person" in connection with the preparation and issuance of that document and also aided and abetted the violations of First City, its officers and directors. Such statements were materially false and misleading. In particular:

a. Defendant A. Robert Abboud, as Chairman of the Board and Chief Executive Officer, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his position as Chairman, Mr. Abboud is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

13

ClibPDF - www.fastio.com

b.   Defendant Robert D. Richley, as President and Chief Operating Officer and a Director, had both ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement and immediate executive control of the individuals who prepared the documents, as well as access to the information used to prepare them.  He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City.  In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public.  Moreover, by virtue of his positions, Mr. Richley is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

c.   Defendant Frank C. Cihak is Vice Chairman and Secretary and Director, had both ultimately supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement and either helped to prepare the documents or had immediate executive control of the individuals who prepared the documents, as well as access to the information used to prepare them. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate

14

the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Cihak is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

d. Defendant Robert Rice, as Executive Vice President and Chairman of the Credit Policy Committee, either helped to prepare the documents or had immediate executive control of the individuals who prepared the documents, as well as access to the information used to prepare them. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Rice is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

e. Defendant William M. Arnold, as Executive Vice President, either helped to prepare the documents or had immediate executive control of the individuals who prepared the documents, as well as access to the information used to prepare them. He either approved the promulgation and dissemination of

15

those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City.  In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public.  Moreover, by virtue of his positions, Mr. Arnold is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

f.    Mr. Robert H. Allen, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement.   He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City.  In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public.  Moreover, by virtue of his positions, Mr. Allen is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

g.    Mr. J. Evans Attwell, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement.     He either approved the

16

promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Attwell is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

h. Mr. William T. Butler, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Butler is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

i. Mr. J. A. Elkins, Jr., as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the

17

promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Elkins is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

j. Mr. James H. Evans, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Evans is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

k. Mr. C. Jackson Grayson, Jr., as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the

18

promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Grayson is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

l.   Mr. Robert N. Murray, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. Murray is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

m.   Mr. Ralph S. O'Connor, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement.   He either approved the

19

promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, his actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of his positions, Mr. O'Connor is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

n. Ms. Margaret S. Wilson, as a Director, had ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports and the Prospectus/Proxy Statement. He either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents being promulgated and disseminated by First City. In either event, her actions rendered substantial assistance to the other Defendants in promulgating false and misleading statements to the investing public. Moreover, by virtue of her positions, Ms. Wilson is a "controlling person" of First City within the meaning of Section 15 of the Securities Act of 1933.

20

## COUNT I

### Sections 10(b) and 20 of the Exchange Act and Rule 10b-5

35.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 34 as if fully set forth herein.

36.  The Defendants have violated Sections 10(b) and 20 of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t, and SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

37.  By means of the mails and other means of interstate commerce, the Defendants, with intent to defraud or in reckless disregard of the facts, made material misrepresentation and omissions in connection with First City's sale of securities to the Class.  Those misrepresentations and omissions concerned the likelihood that First City would have to take additional losses for nonperforming loans.  As a result of those misrepresentations and omissions, the Class has been damaged.

38.  By reason of the foregoing, the Defendants and each of them artificially inflated the market price of First City securities, employed devices, schemes and artifices to defraud, and engaged in acts, practices and a course of business constituting a fraud on the market in First City securities under circumstances where, had the tue facts been disclosed, the First City securities would not have been purchased by members of the Class at the artificially inflated prices created by the Defendants, and as a result Plaintiff and the Class sustained damage.

21

39. The individual Defendants are liable not only because of their own misrepresentations and omissions, but also because they controlled Defendant First City.

40. The Class is entitled to recover its damages from the Defendants.

## COUNT II

### Sections 11, 12(2) and 15 of the Securities Act

41. Plaintiff repeats and realleges the allegations of paragraphs 1 through 40 as if fully set forth herein.

42. On or about April 20, 1988, First City offered and sold its equity securities and rights to the investing public pursuant to the terms of the Proxy Statement/Prospectus filed in connection with that offering. Those securities and rights were sold and disseminated by means of the Proxy Statement/Prospectus and the instrumentalities of interstate commerce.

43. The Proxy Statement/Prospectus was inaccurate and misleading, contained untrue statements of material facts and/or omitted to state facts necessary to make the statements made not misleading and concealed and failed adequately to disclose material facts, including those previously particularized herein.

44. Each of the Defendants either signed the Proxy Statement/Prospectus, or was a director of First City at the time of the filing of said statements, and/or was involved in

ClibPDF - www.fastio.com

the preparation of such statements, and/or was a controlling person of First City and/or, in the case of DLJ, effectively acted as financial adviser, broker and underwriter to the offering. Moreover, each of the Defendants named herein was a substantial and necessary participant in the sale of First City rights and securities to the investing public and each conspired with and/or aided and abetted one another in connection with the sales of said securities.

45. Plaintiff and the members of the Class have sustained damages. The value of First City shares have declined substantially, subsequent to, and due to, disclosure of material facts omitted from the Proxy Statement/Prospectus. Plaintiff and the other members of the Class were thus damaged by the material misstatements and omissions of the aforementioned Proxy Statement/Prospectus in that they purchased or acquired First City securities and rights at inflated prices; whereas, had the true facts been known, they would either not have purchased such securities or not have purchased them at the prices which they paid.

46. Plaintiff on behalf of himself and all those members of the Class similarly situated do hereby offer to tender to Defendants their First City securities and rights acquired by purchase or otherwise acquired in return for the consideration paid for said securities together with interest thereon.

## COUNT III

### Section 27.01 of the
### Texas Business & Commerce Code

47.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 46 as if fully set forth herein.

48.  The Defendants made false representations of material fact to the investing public, for the purpose of inducing the Class to purchase First City securities; and the Class relied on those representations in purchasing those securities.  The Defendants' conduct violates *§* 27.01 of the Texas Business & Commerce Code, and the Class is entitled to recover the actual damages caused by that conduct.

49.  The Class also seeks punitive damages.  In addition, it seeks reasonable and necessary attorneys' fees, expert witness fees, costs of copies of depositions and costs of court.

## COUNT IV

### Common Law Misrepresentation and Fraud

50.  Plaintiff repeats and realleges the allegations of paragraphs 1 through 49 as if fully set forth herein.

51.  The Defendants made materially false statements, and the Class was damaged by its reasonable reliance upon them.

52.  Whether those statements were intentionally false or negligently false, the Class is entitled to recover its actual damages.

24

53. By reason of the foregoing, the Defendants and each of them artificially inflated the market price of First City securities, employed devices, schemes and artifices to defraud, and engaged in acts, practices and a course of business constituting a fraud on the market in First City securities under circumstances where, had the true facts been disclosed, the First City securities would not have been purchased by members of the Class at the artificially inflated prices created by the Defendants, and as a result Plaintiff and the Class sustained damage.

54. The Class also seeks punitive damages.

WHEREFORE, the Class demands judgment against the Defendants, jointly and severally, awarding it compensatory damages and punitive damages, as well as its reasonable attorney fees, expert witness fees, costs of depositions and costs of court. The Class further requests such relief as this Court may deem just and proper.

25

ClibPDF - www.fastio.com

## JURY DEMAND

Plaintiff demands trial by jury on all counts.

DATED: July 16, 1990.

Respectfully submitted,

Law Firm of Harvey Greenfield

By _Harvey Greenfield/MAS_
Harvey Greenfield
1370 Avenue of the Americas
9th Floor
New York, New York 10019
(212) 977-3610

and

Kilgore & Kilgore

By _Ted Anderson/MAS_
Theodore Anderson/01214700
Melissa A. Stendig
Bar Card No. 19142900
700 McKinney Place
3131 McKinney Avenue
Dallas, Texas 75204
(214) 969-9099

ATTORNEYS  FOR  JERRY  KRIM,
PLAINTIFF

26

ClibPDF - www.fastio.com