IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JAN 3 0 1998   **JT**

| | | |
|---|---|---|
| JERRY KRIM, HAROLD L. HARRIS, Individually and as Trustee of MAZEL, INC. PROFIT SHARING PLAN | §<br>§<br>§<br>§ | Michael N. Milby, Clerk of Court |
| Plaintiffs, | §<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO. H-90-2269 |
| A. ROBERT ABBOUD, et al., | §<br>§<br>§ | |
| Defendants. | § | |

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS RICE AND RICHLEY'S
## MOTION TO DISMISS THE SEVENTH AMENDED COMPLAINT

Richard N. Carrell
State Bar No. 03871000
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone (713) 651-5151
Telecopy (713) 651-5246

ATTORNEY-IN-CHARGE FOR DEFENDANTS
ROBERT RICE AND ROBERT D. RICHLEY

OF COUNSEL:

Daniel M. McClure
State Bar No. 13427400
Kathleen Rose
State Bar No.00798473
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone (713) 651-5151
Telecopy (713) 651-5246



# TABLE OF CONTENTS

**PAGE**

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   1

SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   2

BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   5

DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

I.  PLAINTIFFS' CLAIMS OF MISMANAGEMENT, BAD LOANS, AND INADEQUATE
    LOAN LOSS RESERVES DO NOT ADD UP TO SECURITIES FRAUD. . . . . . . .   6

    A.  Securities Fraud Requires an Intentional, Material Misstatement
        of Fact . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   6

    B.  The Seventh Amended Complaint Does Not State a Cause of Action
        for Securities Fraud . . . . . . . . . . . . . . . . . . . . . . . . .   7

        1.  The Facts Alleged in the Complaint Only Add Up To, At
            Most, Mismanagement and "Fraud by Hindsight." . . . . . . . .   7

        2.  None of Defendants' Alleged Misstatements In the Seventh
            Amended Complaint Is Actionable . . . . . . . . . . . . . . . .  12

            a.  Defendants' Alleged Misstatements Constitute Only
                Generalized Optimistic Opinions, Which Are Not
                Actionable. . . . . . . . . . . . . . . . . . . . . . . . .  12

            b.  Any Alleged Misstatement Could Not Have Been
                Material Because the Defendants' Statements As a
                Whole "Bespoke Caution." . . . . . . . . . . . . . . . . .  14

    C.  The Fifth Circuit Has Already Rejected Similar Allegations by Krim
        in Another Securities Suit Against a Texas Bank. . . . . . . . . . .  17

    D.  Courts Have Repeatedly Held That Claims for Bad Loans,
        Inadequate Loan Loss Reserves, and Unprofitable Business
        Strategies Fail to State A Claim For Securities Fraud . . . . . . . .  18

II. PLAINTIFFS FAIL TO STATE A CLAIM FOR SECURITIES FRAUD AGAINST
    DEFENDANTS RICE AND RICHLEY . . . . . . . . . . . . . . . . . . . . .  21

    A.  The Allegations Against Rice and Richley Fail to Plead Scienter . .  21

    B.  Plaintiffs Fail to State a Cause of Action Against Either Rice or
        Richley as "Control Persons." . . . . . . . . . . . . . . . . . . . .  23

0884490.06

III.    PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY WITH RESPECT TO DEFENDANTS RICE AND RICHLEY AND THUS FAIL TO COMPLY WITH THIS COURT'S PRIOR ORDER AND FED. R. CIV. P. 9(b). . . . . . . . . . . . . . . . 25

        A.    Plaintiffs Fail to Comply With This Court's Prior Order. . . . . . . . 25

        B.    The General Requirements of Fed. R. Civ. P. 9(b). . . . . . . . . . . . 26

        C.    The Seventh Amended Complaint Completely Fails To Plead Fraud With Particularly With Respect To Defendants Richley and Rice. . 28

        D.    Plaintiffs' Fleeting and Vague References to Statements By the "Defendants" Fail to Satisfy Rule 9(b). . . . . . . . . . . . . . . . . . . 29

        E.    The Seventh Amended Complaint's Allegations Against All the "Defendants" Fail to Allege Scienter With Particularity. . . . . . . . . 31

        F.    Fifth Circuit Courts Routinely Dismiss Securities Fraud Complaints Under Rule 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

IV.    PLAINTIFFS' RELATED TEXAS STATE LAW CLAIMS SHOULD BE DISMISSED WITH PREJUDICE UNDER FED.R.CIV.P. 12(B)(6) AND 9(B). . . . . . . . . . . . 32

        A.    This Court Should Exercise Its Discretion To Address Plaintiffs' State Law Claims and Dismiss Them With Prejudice. . . . . . . . . . 33

        B.    Plaintiffs Fail to State a Claim For Violations of Tex.Bus. & Comm. Code § 27.01 and Common Law Fraud/Misrepresentation. . . . . . 33

        C.    Plaintiffs' Claims For Breach of Fiduciary Duty, Self Dealing, and Respondeat Superior Fail to State a Claim Upon Which Relief Can Be Granted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        D.    Plaintiffs Fail to State a Claim For Negligent Misrepresentation. . 35

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

ClibPDF - www.fastio.com

# TABLE OF AUTHORITIES

## Cases

*Ackerman v. Bankworchester Corp.,*
751 F. Supp. 11 (D. Mass. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Airborne Freight v. C.R. Lee Enterprises,*
847 S.W.2d 289 (Tex. App.—El Paso, 1992, writ denied) . . . . . . . . . . . . 36

*Biesenbach v. Guenther,* 588 F.2d 400 (3d Cir. 1978) . . . . . . . . . . 12, 20

*Blue Chip Stamps v. Manor Drugs,* 421 U.S. 723 (1975) . . . . . . . . 26

*Christidis v. First Pennsylvania Mortgage Trust,*
717 F.2d 96 (3d Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Continental Savings Assoc. v. Collins,*
814 S.W.2d 829 (Tex. App.—Houston [14th Dist.] 1991, no writ) . . . . . . . . 35

*Davis v. Coopers & Lybrand,* 787 F. Supp. 787 (N.D. Ill. 1992) . . . . . . . .25

*Davis v. Grammer,* 797 S.W.2d 18 (Tex. App.—San Antonio, 1987)
*rev'd on other grounds,* 750 S.W.2d 766 (Tex. 1988) . . . . . . . . . . . . 34

*Decker v. Landmark Savings Assoc.,*
798 F. Supp. 1174 (W.D. Penn. 1991), *aff'd w.o. op.,*
968 F.2d 12 (3d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Dennis v. General Imagining, Inc.,* 918 F.2d 496
(5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

*Denny v. Barber,* 576 F.2d 465 (2d Cir. 1978) . . . . . . . . . . . . . . . 19

*DiLeo v. Ernst & Young,* 901 F.2d 624 (7th Cir. 1990) . . . . . . . 11, 18, 19

*Dubowski v. Dominio Bankshares Corp.,*
763 F. Supp. 169 (W.D. Va. 1991) . . . . . . . . . . . . . . . . . . . . . . 30

*Ernst & Ernst v. Hochfelder,* 425 U.S. 185 n. 12 (1976) . . . . . . . . . . 7

*Gearhart Industries, Inc. v. Smith International, Inc.,*
741 F.2d 707 (5th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . 35

*Gollomp v. MNC Financial, Inc.,* 756 F. Supp. 228 (D.Md. 1991) . . . . . . . 13

*Guidry v. Bank of LaPlace,* 740 F. Supp. 1208 (E.D. La. 1990),
*aff'd in part and reversed in part,* 954 F.2d 278 (5th Cir. 1992) . . . . . . . . 8, 27, 32

*Haft v. Eastland Financial Corp.,*
   755 F. Supp. 1123 (D.R.I. 1991) . . . . . . . . . . . . . . . . . . . 20

*Haralson v. E.F. Hutton,* 919 F.2d 1014 (5th Cir. 1990),
   *modified on other grounds,* 1991 Lexis 1029 (5th Cir. 1991) . . . . . . . . . . . . . . 34

*Hemming v. Alfin Fragrances, Inc.* 690 F. Supp. 239 (S.D.N.Y. 1988). . . . . . . . . . .24

*Hundahl v. United Benefit Insurance Co.,*
   465 F. Supp. 1349 (N.D. Tex. 1979) . . . . . . . . . . . . . . . . . . 10

*In re Browning-Ferris Industries Sec. Lit.,*
   876 F. Supp. 870 (S.D. Tex. 1995) . . . . . . . . . . . . . . . . . 13, 14

*In re Craftmatic Securities Litigation,*
   890 F.2d 628 (3d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . 12

*In re Mobile Telecommunication Technologies Corporation Securities*
   *Litigation,* 915 F. Supp. 828 (S.D. Miss. 1995) . . . . . . . . . . . . . . . . 29, 32

*In re Urcarco Securities Litigation,* 148 F.R.D. 561
   (N.D. Tex. 1993) . . . . . . . . . . . . . . . . . . . . 3, 25, 28, 29, 32

*Konstantinakos v. FDIC,* 719 F.Supp. 35 n.7. (D. Mass. 1989) . . . . . . . . . . . . 11

*Krim v. BancTexas Group, Inc.,* 989 F.2d 1435 (5th Cir. 1993) . . . . . . . . . . 17, 18

*Lasker v. N.Y. State Elec. & Gas Corp.,*
   85 F.3d 55 (2d Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 7

*Lovelace v. Software Spectrum,* 78 F.3d 1015 (5th Cir. 1996) . . . . . . . . . . 7, 28, 32

*Lunza v. Drexel & Co.,* 479 F.2d 1277, 1279 (2d Cir. 1973) *(en banc)* . . . . . . . . . . 24

*Melder v. Morris,* 27 F.3d 1097 (5th Cir. 1994) . . . . . . . . . . . . . 22, 26, 27, 32

*Pharo v. Smith,* 621 F.2d 656 (5th Cir.)
   *rev'd on other grounds,* 625 F.2d 1226 (5th Cir. 1980) . . . . . . . . . . . . . . . . 23

*Raab v. General Physics Corp.,* 4 F.3d 286 (4th Cir. 1993) . . . . . . . . . . . . . . 12

*Romani v. Shearson Lechman Hutton,* 929 F.2d 875 (1st Cir. 1991) . . . . . . . . . . 26

*Ross v. Bolton,* 904 F.2d 819 (2d Cir. 1990) . . . . . . . . . . . . . . . . . . . 27

*Salt v. Centerbank,* 767 F. Supp. 429 (D. Conn. 1990) . . . . . . . . . . . . . . . .29

*Santa Fe Industries, Inc. v. Green,* 97 S.Ct. 1292 (1977) . . . . . . . . . . 11, 12, 19, 20

0884490.06

ClibPDF - www.fastio.com

*Scottish Heritable Trust v. Peat Marwick Main & Co.*,
  81 F.3d 606 (5th Cir. 1996), *cert. denied*, 117 s. Ct. 182 (1996) . . . . . . . . . . . . . 35

*Shields v. Amoskeag Bank Shares, Inc.*, 766 F. Supp. 32, 30 (D.N.H. 1991) . . 18, 21

*Shushany v. Allwaste, Inc.*, 992 F.2d 517 (5th Cir. 1993) . . . . . . . . . . . . . 6, 33

*Smith v. Ayres*, 845 F.2d 1360 (5th Cir. 1988) . . . . . . . . . . . . . 32

*Summer v. Land & Leisure, Inc.*, 664 F.2d 965 (5th Cir. 1981) . . . . . . . . . . . . . 32

*TFC Banking & Savings, F.A. v. Arthur Young & Co.*,
  706 F.Supp. 1408 (D. Minn. 1988) . . . . . . . . . . . . . . . . . . . . . 13

*Thornton v. Micrografx, Inc.*, 878 F. Supp. 931 (N.D. Tex. 1995) . . . . . 13, 28-30, 32

*Todd v. Oppenheimer & Company, Inc.* 78 F.R.D. 415 (S.D.N.Y. 1978) . . . . . . . . 31

*Trenholm v. Ratcliff*, 646 S.W.2d 927 (Tex. 1983) . . . . . . . . . . . . . 34

*Tuchman v. DSC Communications Corp.*, 818 F. Supp. 971 (N.D. Tex. 1993) . . . 30

*Tuchman v. DSC Communications Corp.*, 14 F.3d 1061 (5th Cir. 1994) . . . . . 22, 32

*Unimobil 84, Inc. v. Spurney*, 797 F.2d 214 (5th Cir. 1986) . . . . . . . . . . . . . 28, 29

*Vachon v. Baybanks, Inc.*, 780 F. Supp. 79 (D. Mass. 1991). . . . . . . . . . . . . . . . 20

*United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) . . . . . . . . . . . . . . . . . . . . . 33

*Wexner v. First Manhattan Company*, 902 F.2d 169 (2d Cir. 1990) . . . . . . . . . . . 27

*Whalen v. Carter*, 954 F.2d 1087 (5th Cir. 1992) . . . . . . . . . . . . . . . . . . . . 32

*Wilkes v. Heritage Bankcorp, Inc.*, 767 F. Supp. 1166 (D. Mass. 1991) . . . . . . . . 20

*Williams v. WMX Tech.*, 112 F.3d 175 (5th Cir. 1997)
  *cert. denied*, 118 S. Ct. 412 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . 29, 32

## Rules

Fed. R. Civ. P. 9(b). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

0884490.06

ClibPDF - www.fastio.com

## Other Authority

Wright & Miller, 13B *Federal Practice & Procedure*, § 3567.1, pp. 123-27. . . . . .   33

ClibPDF - www.fastio.com

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

JERRY KRIM, HAROLD L. HARRIS,  §
Individually and as Trustee of MAZEL, §
INC. PROFIT SHARING PLAN       §
                               §
        Plaintiffs,            §
                               §
v.                             §            CIVIL ACTION NO. H-90-2269
                               §
A. ROBERT ABBOUD, et al.,      §
                               §
        Defendants.            §

## MEMORANDUM IN SUPPORT OF
## DEFENDANTS RICE AND RICHLEY'S
## MOTION TO DISMISS THE SEVENTH AMENDED COMPLAINT

## INTRODUCTION

Defendants Robert Rice and Robert D. Richley respectfully file this Memorandum in Support of their Motion to Dismiss the plaintiffs' Seventh Amended Class Action Complaint ("Seventh Amended Complaint" or "Complaint") pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). Defendants Rice and Richley file this separate motion and memorandum in addition to the Defendants' Joint Motion to Dismiss Plaintiffs' Seventh Amended Complaint (the "Defendants' Joint Motion") and memorandum in support. If this Court grants the joint motion, which addresses the lack of standing of plaintiffs Krim and Harris, the instant separate motion of Rice and Richley need not be reached.

0884490.06

Rice and Richley's motion to dismiss addresses four issues:

1.   Whether plaintiffs' allegations of mismanagement, bad loans, and inadequate loan loss reserves state causes of action for securities fraud.

2.   Whether the Seventh Amended Complaint states a cause of action for securities fraud specifically against defendants Rice and Richley.

3.   Whether plaintiffs have pled fraud with particularity with respect to Rice and Richley as required by Rule 9(b).

4.   Whether plaintiffs' related Texas law claims state causes of action against Rice and Richley, as well as the other defendants.

## SUMMARY

The answer to all the above questions is the same: <u>none of plaintiffs' allegations of mismanagement, bad loans, and inadequate loan loss reserves states causes of action for securities fraud or the related Texas law claims, against Rice or Richley</u> or the other defendants. This lawsuit should thus be dismissed with prejudice. Quite simply, <u>it is time for this case to come to an end</u>. Plaintiffs have filed <u>eight complaints</u> over seven years. Before the case was stayed, this Court previously ordered plaintiff Krim to file a (sixth) amended complaint "expressly satisfying the particularities required to establish a claim for securities fraud and for claims under the Securities Act of 1933 or the Securities Exchange Act of 1934." Order of March 26, 1991, p. 2. Docket Sheet No. 52. Plaintiffs previously had the opportunity to take extensive discovery and to investigate the defendants' activities. The Court went one step further in its Order of June 17, 1997, and allowed plaintiffs to take their "best shot" by giving leave to file a Seventh Amended Complaint.

Yet plaintiffs still fail to comply with this Court's Order of March 26, 1991 and to adequately plead securities fraud or the related state law claims. The reason for this is clear: <u>plaintiffs have not adequately pled securities fraud because there is no fraud</u>

-2-

0884490.06

that can be pleaded in this case. *See In re Urcarco Securities Litigation*, 148 F.R.D. 561, 567 (N.D. Tex. 1993) ("[I]f Plaintiffs knew of facts to support their causes of action, those facts would have been trumped in response to the Court's not so subtle concern with the complaint's dearth of factual specificity . . . .") (dismissing securities fraud case). All that happened — and all that plaintiffs allege happened — was, at the very most, bad loans, inadequate loan loss reserves, breach of fiduciary duty by some defendants (but not Rice and Richley), and what in hindsight was a poor business strategy. None of these allegations adds up to a viable claim for securities fraud or any of the related Texas law claims.

*First*, the Seventh Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiffs fail to plead sufficient facts to state a cause of action for securities fraud. While the Seventh Amended Complaint is replete with details alleging that bad loans were made, that First City Bancorporation of Texas, Inc. ("First City") had inadequate loan loss reserves, and that it had an unprofitable business strategy, plaintiffs fail to plead any facts to support their conclusory allegations that defendants knew that First City's public statements and filings were false at the time they were made. Absent any facts regarding defendants' scienter, all that the Seventh Amended Complaint alleges is mismanagement and "fraud by hindsight." Additionally, the Complaint should be dismissed because First City's alleged misstatements are not actionable under the securities laws; they are only generalized optimistic statements, and First City's public statements and filings as a whole "bespoke caution."

*Second*, the Seventh Amended Complaint fails to state a cause of action for securities fraud specifically against defendants Rice and Richley. Plaintiffs plead no facts supporting their wholly conclusory assertions that Rice and Richley each knew

ClibPDF - www.fastio.com

that First City's public statements and filings were false at the time they were made. Plaintiffs plead no facts to support their conclusory assertions that either Rice and Richley made or participated in First City's allegedly fraudulent statements with scienter. Nor have plaintiffs adequately pleaded that either Rice or Richley, former officers of First City, was a "control person."

*Third*, the Seventh Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 9(b); it fails to plead fraud with particularly with regard to defendants Rice and Richley. Plaintiffs' allegations against Rice and Richley are wholly conclusory. Plaintiffs plead absolutely no facts supporting their assertions that Rice and Richley each knew First City's statements were false when made. Further, plaintiffs' fleeting and vague references to First City's public filings and statements cannot disguise the fact that the complaint fails to satisfy Rule 9(b). Plaintiffs plead no facts explaining why each statement by First City was allegedly false and misleading, or why each specific defendant allegedly knew those statements were false or misleading when made. Plaintiffs have failed to comply with this Court's Order of March 26, 1991, to replead "expressly satisfying the particularities required to establish a claim for securities fraud."

*Fourth*, plaintiffs' state law claims should be dismissed with prejudice on the same grounds as the federal claims. This Court has the discretion to exercise jurisdiction to dismiss the state law claims on their merits and should do so in the instant case. None of those claims adequately pleads a cause of action against Rice or Richley.

In sum, the Seventh Amended Complaint should be dismissed with prejudice in its entirety.

0884490.06

## BACKGROUND

Because the Defendants' Joint Motion to dismiss and memorandum in support sets forth the factual and procedural background of this case in detail, only a few additional facts will be repeated here. Defendant Rice was an Executive Vice President of First City, allegedly from 1988-1992.[1]  Complaint ¶ 24.  Defendant Richley was the President, Chief Operating Officer, and a director of First City from 1988 to 1992. Complaint ¶ 23.  Plaintiff Jerry Krim named Rice and Richley as defendants, along with others, in his Original Complaint, filed on July 16, 1990.  The original complaint, as well as the seven amended complaints, asserted claims for violations of the Securities Act of 1933, the Securities Exchange Act of 1934, and SEC Rule 10b-5, as well as related Texas law claims.

Since July 1990, Krim has amended his complaint seven times, in a futile effort to state viable causes of action.  Within months after filing the original complaint, Krim amended it five times — three times in response to motions to dismiss filed by the defendants.  Recognizing the deficiencies of the Fifth Amended Complaint, this Court ordered Krim "to file a Sixth Amended Complaint, within 60 days expressly satisfying the particularities required to establish a claim for securities fraud and for claims under the Securities Act of 1933 or the Securities Exchange Act of 1934.  The plaintiff should be mindful of FRCP 11 in this instance." Exh. 1, Order of March 26, 1991, p. 2.

Krim filed his sixth amended complaint on July 24, 1991.  All defendants moved to dismiss it, and the Court took those motions under advisement pending the completion of discovery.  Extensive discovery ensued.  The plaintiff took nine depositions of the key witnesses, and defendants produced over 150 boxes of documents.

---

[1] In fact, contrary to plaintiffs' allegations, Mr. Rice retired from First City in August 1990.

Plaintiffs filed their Seventh Amended Complaint on October 14, 1997. But although it is long-winded, this complaint suffers from the same deficiencies as the previous ones. The facts alleged in the Seventh Amended Complaint do not adequately plead securities fraud or the related state law claims against defendants Rice and Richley, or the other defendants. The Seventh Amended Complaint thus should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b).

## DISCUSSION

I.   **PLAINTIFFS' CLAIMS OF MISMANAGEMENT, BAD LOANS, AND INADEQUATE LOAN LOSS RESERVES DO NOT ADD UP TO SECURITIES FRAUD.**

A.   **Securities Fraud Requires an Intentional, Material Misstatement of Fact.**

The Seventh Amended Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). While the complaint is replete with details about the defendants' alleged mismanagement, bad loans, and inadequate loan loss reserves, the complaint does not state a cause of action for securities fraud. Also, the alleged misstatements by First City identified in the Seventh Amended Complaint are not actionable. Plaintiffs have not alleged any facts supporting their conclusory assertions that Rice or Richley or any other defendant made the alleged misstatements with the intent to deceive First City's shareholders.

"The elements of a securities fraud claim are (1) a misstatement or an omission (2) of material fact (3) made with scienter (4) on which the plaintiff relied (5) that proximately caused his injury." *Shushany v. Allwaste, Inc.*, 992 F.2d 517, 520-21 (5th Cir. 1993) (internal quotations and citations omitted).[2] Two elements of this definition

_____

[2]"Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), prohibits any person from using or employing a 'manipulative or deceptive device or contrivance' in connection with the sale of a security." *Lasker v. N.Y. State Electric and Gas Corp.*, 85 F.3d 55, 58 (2d Cir. 1996). "Rule 10b-5, 17 C.F.R. § 240.10b-5, issued under that statute, prohibits the making of 'any untrue statement of a material fact or [omission

0884490.06

are important in the instant case. First, securities fraud requires scienter: plaintiffs must demonstrate that defendants made the allegedly false or misleading statements with the intent to deceive First City's shareholders. *See e.g., Krim v. BancTexas Group, Inc.*, 989 F.2d 1435, 1446 (5th Cir. 1993) (Scienter is "an essential element" of securities fraud); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193 n. 12 (1976) (Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud."). Plaintiffs must demonstrate that defendants "knew that any of their statements were materially false or misleading **when made**." *Lovelace v. Software Spectrum*, 78 F.3d 1015, 1019 (5th Cir. 1996) (emphasis added).

Second "[e]ach of the securities laws invoked by plaintiffs requires that they identify a materially misleading statement made by the defendants." *Lasker v. N.Y. State Elec. & Gas Corp.*, 85 F.3d 55, 57-58 (2d Cir. 1996).

### B. The Seventh Amended Complaint Does Not State a Cause of Action for Securities Fraud.

#### 1. The Facts Alleged in the Complaint Only Add Up To, At Most, Mismanagement and "Fraud by Hindsight."

The Seventh Amended Complaint does not satisfy the above two elements of securities fraud and thus should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Initially, plaintiffs allege no facts supporting their conclusions that Rice or Richley or any other defendant knew that First City's alleged misstatements were false at the time

---

of] a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." *Id.* "Section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, creates a cause of action when any part of a registration statement 'contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading.'" *Id.* "Finally, Section 12(2) of the Act imposes liability on any person who offers or sells a security by means of a prospectus or oral communication including a materially misleading statement or omission." *Id.*

-7-

they were made.   Lacking these crucial facts, the Seventh Amended Complaint only states claims for mismanagement and "fraud by hindsight" -- not securities fraud.

In determining whether the Seventh Amended Complaint should be dismissed pursuant to Rule 12(b)(6), this Court must analyze the <u>facts</u> set forth in the complaint and accept all well-pleaded factual allegations as true. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  "[C]onclusory allegations and unwarranted deductions of fact are not admitted as true . . . ." *Id.* (citations omitted).  "In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . . ." *Id.* (internal quotation and citation omitted; ellipses in original).

The Seventh Amended Complaint alleges the following <u>facts</u>:  (1) that First City invested in high risk, highly-leveraged transactions ("HLT") and "that First City stated that entry into the HLT market should substantially enhance the result of its operations" (Complaint ¶¶ 44 & 53(d)); (2) that First City invested in international loans that had relatively high risk (Complaint ¶¶ 46-52, 53(c)); (3) that some defendants (but not Rice or Richley) allegedly engaged in self-dealing, made allegedly improper payments and loans, and allegedly breached their fiduciary duties to First City (Complaint ¶¶ 53(e), 53(f), 69-73, 77-87); (4) that First City believed its loan loss reserves and core savings would be sufficient to absorb predicted loan losses (Complaint ¶ 41-43, 63-64); (5) that First City believed at the time the Collecting Bank was established that it would be successful in collecting past-due and defaulted-upon loans (Complaint ¶¶ 54-58); and (6) that First City made generalized optimistic statements about First City's prospects (¶¶ 2, 38, 41, 45, 52).

Plaintiffs then allege the following facts: (1) that four major debtors default on their loans (Complaint ¶ 42); (2) that First City's HLT loan strategy was unprofitable (Complaint ¶¶ 44, 64); (3) that many of First City's international loans were unprofitable (Complaint ¶¶ 46-52, 53(c)); (4) that First City made a series of other bad loans (Complaint ¶¶ 53, 65); (5) that the Collecting Bank was unable to collect many past due and defaulted-upon loans and had to write them off, making the Collecting Bank unable to pay its debts to First City (Complaint ¶¶ 59-62); (6) that First City's loan loss reserves were inadequate to cover the bank's losses (Complaint ¶¶ 64-65); and (7) that First City subsequently announced that it had suffered substantial losses (Complaint ¶¶ 66-68).

But despite all this detail, two key facts are missing from the complaint. *First*, plaintiffs do not point to any specific fact in any of First City's public statements or filings that is false. Plaintiffs do not allege, for example, that defendants misreported First City's amount of the loan loss reserves or misreported the amount of loans actually written-off. *Second*, plaintiffs set forth no facts to establish scienter — that defendants (allegedly) knew that First City's loans were bad investments when they were made, knew that the Collecting Bank would not be as successful as believed in collecting past due and defaulted-upon loans, and knew that the loan loss reserves would not be sufficient at the time they were made.

Instead of setting forth these key facts, the Seventh Amended Complaint merely couples the extensive facts about First City's bad loans, inadequate loan loss reserves, and alleged breaches of fiduciary duties with the conclusory allegations, devoid of any facts, that defendants acted with scienter. Plaintiffs essentially allege that because First City lost a substantial amount of money, defendants must have known that the

0884490.06

-9-

loans were bad when made; must have known that First City's loan loss reserves would be inadequate to cover the expected losses at the time the reserves were set aside; and that defendants must have known the Collecting Bank would be unsuccessful in collecting First City's past due and defaulted-upon loans when it was established. For example, plaintiffs repeatedly make such conclusory assertions as:

- ¶ 61: "*The magnitude of the write-downs and the relatively short period of time* that it took for the assets to deteriorate *indicates that the balances* of the [Senior Notes] due from Collecting Bank *were overstated from inception* . . . ." (emphasis added)

- ¶ 44: "The 1988 Annual Report and Form 10-K also materially misrepresented the effect of its risky investments. Instead of disclosing that substantial losses were likely due to such high risk, *First City stated that entry into the HLT market should substantially enhance the result* of its operations. (*See* 1988 AR at 30). *In fact, non-performing assets in general increased dramatically, causing a decrease in net income.*" (emphasis added)

But, despite plaintiffs' artful pleading, the *facts* (as opposed to the conclusions) alleged in the Seventh Amended Complaint do not add up to securities fraud. *See Hundahl v. United Benefit Insurance Co.*, 465 F. Supp. 1349, 1365-66 (N.D. Tex. 1979) (Although "[t]he plaintiffs here have, with undenial skill, woven a complex series of acts of mismanagement into a fabric that appears to reflect a scheme of corporate deception, . . . the central thrust of [the] claim or series of claims arises from acts of corporate mismanagement, [which] are not cognizable under federal law."). All plaintiffs allege is that, at most, defendants poorly managed First City and made loans that later had to be written-off — a classic case of fraud by hindsight. But instead of relying on subsequent developments (such as the default of four borrowers and the re-valuation of assets in the Collecting Bank, courts have repeatedly required a securities fraud plaintiff to allege <u>contemporaneous</u> facts that give rise to a reasonable belief that the defendants knew the challenged statements were <u>false when made</u>. As the Seventh

-10-

Circuit explained in dismissing a securities fraud suit based on Continental Illinois Bank's bad loans, inadequate loan loss reserves, and unprofitable business strategies:

> The story in this complaint is familiar in securities litigation. At one time the firm bathes itself in a favorable light. Later the firm discloses that things are less rosy. The plaintiff contends that the difference must be attributable to fraud. "Must be" is the critical phrase, for the complaint offers no information other than the differences between the two statements of the firm's condition.

*DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), *cert. denied*, 498 U.S. 941 (1990). But "[b]ecause only a fraction of financial deteriorations reflects fraud, plaintiffs may not proffer the different financial statements and rest. Investors must point to some facts suggesting that the difference is attributable to fraud." *Id*. "There is no 'fraud by hindsight' . . . ." *Id*. at 628. Indeed, the Seventh Circuit emphasized that:

> For any bad loan the time comes when the debtor's failure is so plain that the loan is written down or written off. No matter when a bank does this, someone may say that it should have acted sooner. *If all that is involved is a dispute about the timing of the writeoff, based on estimates of the probability that a particular debtor will pay, we do not have fraud; we may not even have negligence.*

*Id*. at 627 (emphasis added).

In the instant case, plaintiffs have pointed to no facts suggesting fraud, but only to facts demonstrating that First City made bad loans and lost money—facts suggesting, at most, poor management. "And it is axiomatic that the federal securities laws do not provide a cause of action for corporate mismanagement." *Konstantinakos v. FDIC*, 719 F.Supp. 35, 39 n.7. (D. Mass. 1989). "The United States Supreme Court has held that the federal securities laws do not regulate 'transactions which constitute no more than internal corporate mismanagement.'" *Ackerman v. Bankworchester Corp.*, 751 F. Supp. 11, 12 (D. Mass. 1990) (citing *Santa Fe Industries, Inc. v. Green*, 97 S.Ct. 1292, 1304

0884490.06

(1977)). Similarly, "a breach of fiduciary duty . . . does not violate the [Exchange Act] statute or the Rule [10b-5]." *In re Craftmatic Securities Litigation*, 890 F.2d 628, 638 (3d Cir. 1989); *see also Biesenbach v. Guenther*, 588 F.2d 400, 402 (3d Cir. 1978) ("In effect, appellants are stating that the failure to disclose the breach of fiduciary duty is a misrepresentation sufficient to constitute a violation of the Act. We refuse to adopt this approach, which would clearly circumvent the Supreme Court's holding in *Santa Fe*."). In short, this case should be dismissed for failing to plead the elements of securities fraud.

### 2. None of Defendants' Alleged Misstatements In the Seventh Amended Complaint Is Actionable.

#### a. Defendants' Alleged Misstatements Constitute Only Generalized Optimistic Opinions, Which Are Not Actionable.

Additionally, the Seventh Amended Complaint should be dismissed because none of First City's alleged misstatements is actionable under the securities laws. Initially, the alleged misstatements are only general optimistic opinions about First City's future prospects, and thus cannot constitute material misstatements of fact. *E.g.*, Complaint ¶ 45 ("'A new company, headquartered in Texas, committed to Texas, and with a strong national and international presence, First City is today a leading regional financial institution ***making solid progress toward our goal*** of becoming a formidable super-regional competitor.'") (emphasis added); ¶ 46 ("The Proxy Statement/Prospectus falsely stated that First City . . . would seek to increase its business in areas such as consumer lending with 'potentially attractive margins and . . . more predictable risks' (p. 99)."). "'Soft,' 'puffing,' statements such as these generally lack materiality because the market price of a share is not inflated by vague statements predicting growth." *Raab v. General Physics Corp.*, 4 F.3d 286, 289 (4th Cir. 1993).

0884490.06

-12-

Similarly, defendants' statements that they "believed" that First City's loan loss reserves would be sufficient and that they believed the collecting bank would be able to collect more debts that it turned out to be able, constitute only generalized predictions and are thus not actionable. *E.g.*, Complaint ¶ 42 ("'First City **believes** the allowance [for loan losses] will be adequate in that initially New First City will not have any non-performing loans.'") (emphasis added); ¶ 63 ("The 1988 Annual Report falsely stated that 'Management of First City **believes** the allowance for loan losses at December 31, 1988 was adequate to cover expected losses based on economic circumstances known or anticipated at that time.' (1988 AR at 32)) (emphasis added). "The Fifth Circuit has recently affirmed that projections of future performance, not worded as guarantees, are generally not actionable under the federal securities laws." *In re Browning-Ferris Industries Sec. Lit.*, 876 F. Supp. 870, 881 (S.D. Tex. 1995); *see also Thornton v. Micrografx, Inc.*, 878 F. Supp. 931, 935 (N.D. Tex. 1995) (dismissing securities fraud suit because "[f]ederal securities law demands truth, not clairvoyance.")

Indeed, numerous courts have recognized that statements regarding a bank's loan loss reserves do not constitute securities law violations. *Christidis v. First Pennsylvania Mortgage Trust*, 717 F.2d 96, 99 (3d Cir. 1983) (Rejecting securities fraud claims based on bad loans and inadequate loan loss reserves: "The allegations that the 'loans were subject to recognized and substantial losses' is meaningless, for the purpose of the reserve is to anticipate losses not yet recognized."); *Gollomp v. MNC Financial, Inc.*, 756 F. Supp. 228, 231 (D.Md. 1991) (dismissing securities suit based on inadequate loan loss reserves and stating that "mismanagement and/or erroneous economic prognostication standing alone do not constitute fraud . . . ."), *TFC Banking & Savings,*

0884490.06

*F.A. v. Arthur Young & Co.*, 706 F. Supp. 1408, 1412 (D. Minn. 1988) (statements regarding loan loss reserves did not constitute an actionable misrepresentation).

> **b.      Any Alleged Misstatement Could Not Have Been Material Because the Defendants' Statements As a Whole "Bespoke Caution."**

To the extent that First City's statements might be considered actionable when taken in isolation, the statements are not actionable under the "bespeaks caution" doctrine. "[T]he bespeaks caution doctrine has developed to address situations in which optimistic projections are coupled with cautionary language — in particular, relevant specific facts or assumptions — affecting the reasonableness of reliance on the materiality of those projections." *In re Browning-Ferris Industries*, 876 F. Supp. at 879 (citations and quotations omitted). "To put it another way, the 'bespeaks caution' doctrine reflects the unremarkable proposition that statements must be analyzed in context." *Id.* (citation and internal quotations omitted). "The appropriate inquiry is whether, under all the circumstances, the omitted fact or the prediction without a reasonable basis 'is one that a reasonable investor would consider significant in making the decision to invest, such that it alters the total mix of information available about the proposed investment." *Id.* at 878 (internal quotations and citations omitted). "Inclusion of cautionary language — along with disclosure of any firm-specific adverse facts or assumptions — is, of course, relevant to the materiality inquiry, for such inclusion or disclosure is part of the total mix of information." *Id.* at 878-79 (internal quotations and citations omitted).

In the instant case, any allegedly optimistic misstatement could not have been material when considered in its context. For example, plaintiffs allege that the 1988 Proxy Statement/Prospectus falsely stated that "the allowance for loan losses was

-14-

0884490.06

'adequate in that initially New First City will not have any non-performing loans' (p.98)" and that the 1998 Proxy Statement/Prospectus, along with other First City statements, "misled" shareholders into believing that New First City "would not experience the problems with non-performing loans of the same relative magnitude as those it had previously experienced." Complaint ¶¶ 63, 38. But plaintiffs ignore the fact that the 1988 Proxy Statement/Prospectus[3] also contains statements such as:

> "*First City has suffered severe operating losses* since the beginning of 1986, *and its earnings have been unstable for several years* prior to that time. . . . Accordingly, *New First City's operations will remain subject to the same market and economic influences* as those affecting such operations prior to the Reorganization" (p. 78) (emphasis added); and

> "However, *there can be no assurance that, following the Reorganization, market funding sources will be sufficient to satisfy the operating and liquidity needs of New First City* and the Subsidiary Banks, and the regulatory requirements to which the Subsidiary Banks are subject, if New First City's operating results do not improve significantly for a prolonged period of time over those reported by First City in recent years." *Id.* (emphasis added)

Similarly, plaintiffs contend that "[i]nstead of disclosing that substantial losses were likely due to such high risk, First City stated that entry into the HLT market should substantially enhance the result of its operations." Complaint ¶ 44 (citing 1988 Annual Report at 30). But *on the very same page cited by plaintiffs*, the Annual Report extensively describes the potential risks inherent in high risk, highly leveraged transaction loans: "the high level of the borrowers' debt in relationship to net worth and total assets places heavy demands on cash flow. These demands reduce the borrowers' ability to absorb the effects of unanticipated economic change, including

---

[3]The Proxy Statement/Prospectus is attached as Exhibit B to the Acker Affidavit, attached to the "Memorandum of Law In Support of Defendants' Joint Motion to Dismiss Plaintiffs' Seventh Amended Complaint." This Court can consider the entire 1988 Proxy Statement/Prospectus in a motion to dismiss because plaintiffs referenced it and attached portions of it to the Seventh Amended Complaint. *See Lovelace*, 78 F.3d at 1017-18.

-15-

interest rate changes." 1988 Annual Report at 30 (Exh. D to Seventh Amended Complaint). Indeed, the Annual Report expressly warned that "HLT borrowers are particularly subject to changes in the economic environment, and some weakness in the HLT portfolio could be expected in a sustained high-rate environment." *Id*.

Additionally, plaintiffs assert that defendants failed to disclose First City's international loans and that "[t]he 1988 Annual Report gave the false impression that First City would limit its future real estate lending to areas like Texas . . . ." Complaint ¶¶ 45-46, 51 & 53(c)). To the contrary, the 1988 Annual Report explains that "First City is also committed to serving foreign trade at all levels and maintaining correspondent banking relationships throughout Texas, the United States, and around the world. Mexico and the maquiladora, or 'twin plant,' program are major First City priorities." 1988 Annual Report at 6 (Exh. D to Seventh Amended Complaint). The Annual Report further emphasizes that "[a]lthough many banks are retrenching their international activities, First City does not intend to abandon this market. In fact, management expects to emphasize this sector by building expertise in trade finance and concentrating its international lending in trade and trade-related finance." *Id*. at 31-32.

Moreover, plaintiffs' allegations that shareholders were not adequately informed about the difficulties the Collecting Bank might have in collecting First City's past-due and defaulted-upon loans, is without any merit. Complaint ¶¶ 54-58. The 1988 Proxy Statement/Prospectus clearly informed the shareholders that:

> *In addition to the inherent credit risks associated with such assets (substantially all of which will be non-performing or past due* or will otherwise present unfavorable credit characteristics), *the Collecting Bank will also be subject to the economic risks associated with operations in the Texas economy* described above. *There can be no assurance that the Collecting Bank will have cash collections sufficient to meet its obligations* in respect of the Collecting Bank Senior Notes and the SSNs. . . . *In such a case, New First City, in all likelihood, would be required to write down the value of such notes,* which could materially and

0884490.06                                    -16-

adversely affect New First City's operating result and capital (p. 81) (emphasis added).

## C.    The Fifth Circuit Has Already Rejected Similar Allegations by Krim in Another Securities Suit Against a Texas Bank.

Indeed, the instant lawsuit's lack of merit is well illustrated by the fact that the Fifth Circuit has already rejected another suit strikingly similar to this one brought by the same plaintiff, Jerry Krim, against another Texas bank. In *Krim v. BancTexas Group, Inc.*, 989 F.2d 1435 (5th Cir. 1993), plaintiff Krim sued BancTexas Group, Inc. ("BTX") for securities fraud based on the drop in its stock price in the late 1980s, following its reorganization. Just like in the instant case, plaintiff Krim filed a series of amended complaints.

Krim alleged that BTX made generally optimistic statements about the bank's prospects following its reorganization; allegedly failed to disclose that it had $50 million in loans for which payments were 30-89 days overdue and instead reported $25 million in "potential problem loans;" and misrepresented the amount of loans which were energy related. *Id.* at 1439. "Plaintiff also alleged that BTX knew or should have known that the percentage of its assets which were non-performing would exceed the amount available from 'loan loss reserves.'" *Id.* at 1439-40. After allowing Krim to amend his complaint five times, the district court finally granted judgment to the defendants.

The Fifth Circuit affirmed the district court's rejection of Krim's claims. It explained that "projections of future performance not worded as guarantees are generally not actionable under the federal securities laws." *Id.* at 1446. "Other than an opinion expressing the hope that the restructuring might make the company a viable business enterprise, however, there is no evidence that BTX promised any particular

-17-

0884490.06

value for its stock or that its management issued the prospectus with certain knowledge that the company was doomed." *Id.* And "[i]nsofar as Krim complains that BTX 'should have known' that its assets would become less profitable and its loan losses would increase, he is claiming negligence in predicting the future economic climate, which is not actionable under the federal securities laws." *Id.* at 1149. The Fifth Circuit also emphasized that BTX's statements "bespoke caution": "The prospectus did not hide the fact that BTX had tens of millions of dollars in loans on which payments were overdue, in addition to the over \$106 million in 'nonperforming loans.'" *Id.* at 1448.

**D.      Courts Have Repeatedly Held That Claims for Bad Loans, Inadequate Loan Loss Reserves, and Unprofitable Business Strategies Fail to State A Claim For Securities Fraud.**

Indeed, not just the Fifth Circuit but other federal courts as well have repeatedly rejected securities fraud suits just like the instant case, that are based on a bank's bad loans, inadequate loan loss reserves, directors' and officers' alleged breaches of fiduciary duties, and unprofitable lending strategies, pursuant to Fed. R. Civ. P. 12(b)(6), as well as Rule 9(b). *Shields v. Amoskeag Bank Shares, Inc.*, 766 F. Supp. 32, 30 (D.N.H. 1991) ("Most courts recently faced with strikingly similar complaints have concluded that those allegations amount to corporate mismanagement and poor business judgment in coping with the general economic downturn, rather than fraud.") (collecting cases). For example, the Seventh Circuit in *DiLeo v. Ernest & Young*, 901 F.2d 624 (7th Cir. 1990), dismissed a securities fraud suit alleging that the defendants failed to disclose that a substantial amount of Illinois Continental Bank's loans were likely to become uncollectible; that the bank's annual report failed to reflect that its necessary loan loss reserves were understated by \$600 million; that the defendants understated the bank's

0884490.06

net credit losses by $4 billion; and that the defendants understated the amount of non-performing loans. *Id.* at 626-27. The Seventh Circuit explained that "[s]ecurities laws do not guarantee sound business practices and do not protect investors against reverses." *Id.* at 627. And in that case, even the alleged loss of *four billion dollars* within a short period of time was not sufficient to plead fraud: "Four billion dollars is a big number, but even a large column of big numbers need not add up to fraud." *Id.*

Similarly, the Second Circuit in *Denny v. Barber*, 576 F.2d 465 (2d Cir. 1978) dismissed a suit like the instant one. The *Denny* plaintiffs alleged that the defendants made misleading statements about the extent of Chase Manhattan Corporation's international and real estate loans; allegedly delayed writing-off loans that the defendants "knew" were uncollectible; failed to timely disclose the risks of many loans; and failed to provide adequate loan loss reserves. *Id.* at 467-68. The Second Circuit explained that: "the complaint is an example of alleging fraud by hindsight. For the most part, plaintiff has simply seized upon disclosures made in later annual reports and alleged that they should have been made in earlier ones." *Id.* at 470. But "[w]hile greater clairvoyance in 1973 might have led to a realization that foreign governments and enterprises might encounter difficulties . . . failure to make such perceptions does not constitute fraud." *Id.* at 470.

Further, *Decker v. Landmark Savings Assoc.*, 798 F. Supp. 1174 (W.D. Penn. 1991), *aff'd w.o. published opinion*, 968 F.2d 12 (3d Cir. 1992), dismissed a securities fraud complaint alleging that defendants failed to disclose that the bank made bad loans and had inadequate loan loss reserves. The court explained that: "[w]hile these claims might support a claim of mismanagement by defendants, *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977), recognized that

-19-

0884490.06

mismanagement is not a basis for a federal claim." *Id.* at 1180; *see also Haft v. Eastland Financial Corp.*, 755 F. Supp. 1123, 1131 (D.R.I. 1991) (Dismissing a securities fraud complaint based on a bank's bad loans and inadequate loan loss reserves because it did "no more [than] allege corporate mismanagement. . . . The complaint abounds with words highlighting the possibility that the defendant corporation was poorly managed.   Inadequacy, inflexibility, lack of prudence, unmanageable — all words alleging that the defendant was not up to the task of managing the bank.  Failing to disclose possible mismanagement or incompetence does not state a federal securities law claim."); *Wilkes v. Heritage Bankcorp, Inc.*, 767 F. Supp. 1166, 1171 (D. Mass. 1991) ("Accepting plaintiffs' loan loss reserve allegation as an adequate Rule 10b-5 claim would require this Court to accept questionable corporate business judgments as the basis for securities fraud suits brought by stock purchasers who become disappointed by their investments. . . . This would also open up a vast new area of federal scrutiny of corporate conduct traditionally left to state regulation.") (internal quotations and citations omitted); *Dubowski v. Dominion Bankshares Corp.*, 763 F. Supp. 169 (W.D. Va. 1991) ("For, in claiming that the Corporation's lending practices and control had become increasingly unmanageable, that [the defendant] had over-concentrated its loan portfolio in the real estate sector of the economy, and that the Corporation failed to provide inadequate loan loss reserves, plaintiff claim only corporate mismanagement.  The errors to which plaintiffs point are actually judgment calls by the Bank officials."); *Vachon v. Baybanks, Inc.*, 780 F. Supp. 79, 80 (D. Mass. 1991) (dismissing securities fraud suit because "[a] bank's calculation of its loan loss reserves reflects an internal corporate decision.  Congress, through § 10b, did not attempt to regulate such decisions."); *Salt v. Centerbank*, 767 F. Supp. 429, 431 (D.

-20-

Conn. 1990) (dismissing securities fraud suit based on inadequate loan loss reserves because "[p]laintiff's sole substantiation for his accusations is the <u>timing</u> of defendants' announcements.") (emphasis in original).[4]

This Court should follow the Fifth Circuit and other federal courts in holding that the instant claims do not state a course of action for securities fraud.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR SECURITIES FRAUD AGAINST DEFENDANTS RICE AND RICHLEY.

### A. The Allegations Against Rice and Richley Fail to Plead Scienter.

In addition to the above arguments regarding all defendants, plaintiffs fail to state a claim against defendants Rice and Richley specifically. First, plaintiffs set forth no facts establishing that either Rice or Richley knew the alleged misstatements were false when made. The only paragraphs addressing Rice and Richley's scienter are the following:

> ¶ 89(c): Defendant **Robert D. Richley**, as President and Chief Operating Officer and a Director, had both ultimate supervisory authority for the promulgation and dissemination of the 1988 and 1989 Annual Reports, the quarterly reports issued during 1988, 1989 and 1990, as well as the Proxy Statement/Prospectus, and immediate executive control of the individuals who prepared the documents, as well as access to the information used to prepare them. He *either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents* being promulgated and disseminated by First City. In either event, by his actions Richley participated with the other defendants in promulgating materially false and misleading statements to the investing public. . . . (emphasis added)

---

[4]*See also Shields*, 766 F. Supp. at 36-38 (dismissing securities fraud suit based on inadequate loan loss reserves and bad loans); *Ackerman*, 751 F. Supp. at 12-13 (dismissing securities fraud suit alleging that defendants knowingly failed to disclose inadequate loan loss reserves and bad loans); *Biesenbach*, 588 F.2d at 402 (dismissing securities fraud suit alleging that defendants failed to disclose breach of fiduciary duties in making loans); *Christidis*, 717 F.2d at 98-100 (dismissing securities fraud suit based on bad loans and inadequate loan loss reserves); *Gallomp*, 756 F. Supp. at 231-32 (dismissing securities fraud suit based on inadequate loan loss reserves).

-21-

¶ 89(d):   Defendant **Robert Rice**, as Executive Vice President and Chairman of the Credit Policy Committee, either helped to prepare the documents or had immediate executive control of the individuals who prepared the documents, as well as access to the information used to prepare them.  He *either approved the promulgation and dissemination of those documents with knowledge that they contained the false and misleading statements or recklessly failed to investigate the contents of documents* being promulgated and disseminated by First City.  In either event, by his actions Robert Rice participated with the other Defendants in promulgating materially false and misleading statements to the investing public. . . . (emphasis added)

Additionally, plaintiffs plead the following regarding all defendants:

¶ 88:   The *Defendants made material false representations knowingly or recklessly in order to inflate the market price of the stock of First City and to retain their various positions at First City* and the emoluments thereof. . . . (emphasis added)

These allegations wholly fail to plead scienter.  Plaintiffs plead *no facts* from which it could reasonably be inferred that Rice or Richley knew First City's alleged misstatements were false at the time they were made.  Plaintiffs do not allege, for example, that Rice or Richley engaged in self-dealing or personally benefitted from the alleged fraud.  Indeed, plaintiffs do not allege (nor could they) that Rice was a director of First City or that he signed any of First City's public filings or statements.

And the Fifth Circuit has already rejected the argument made by plaintiffs that they can establish that defendants had a motive for committing fraud claims because they allegedly acted to inflate First City's company's stock price and to maintain their corporate positions. *See Melder v. Morris*, 27 F.3d 1097, 1102 (5th Cir. 1994) (rejecting allegations that defendants acted fraudulently "so that they could inflate the price of the Company's common stock in order to (i) successfully bring to fruition the offerings; (ii) protect and enhance their executive positions and the substantial compensation and prestige they obtained thereby. . . ."); *Tuchman v. DSC Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994) (rejecting that plaintiff could establish a motive for fraud

0884490.06

based on the allegation that defendants acted for the purpose of, *inter alia*, "preserving defendants' positions, perquisites and emoluments of office. . . ."). In short, all the Seventh Amended Complaint makes are purely conclusory allegations regarding scienter, and are thus insufficient to state a primary claim for securities fraud against Rice and Richley.

**B.      Plaintiffs Fail to State a Cause of Action Against Either Rice or Richley as "Control Persons."**

Plaintiffs also fail to state a cause of action for secondary liability against Rice and Richley as "control persons" pursuant to § 20 of the Exchange Act and § 15 of the Securities Act. The Fifth Circuit applies the same requirements of "control" to claims under both sections. *Pharo v. Smith*, 621 F.2d 656, 673 (5th Cir.), *aff'd in part and remanded in part on other grounds*, 625 F.2d 1226 (5th Cir. 1980) ("we give the two sections the same interpretation."). First, to state a claim under §§ 15 and 20, plaintiffs must first state a primary claim for securities fraud under §§ 11 and 12 of the Securities Act and § 10(b) of the Exchange Act. *Dennis v. General Imagining, Inc.*, 918 F.2d 496, 509 (5th Cir. 1990) (violations of §§ 11, 12 and 10(b) are predicate acts for violations of §§ 15 and 20). Second, plaintiffs must plead <u>facts</u> to suggest that each defendant "had actual power or influence over the controlled person" and "induced or participated in the alleged violation." *Dennis*, 918 F.2d at 509.

Plaintiffs do not satisfy either element of control. First, as set forth above, plaintiffs fail to state a cause of action for violations of §§ 11, 12 and 10(b) against any of the defendants or specifically against Rice and Richley. Second, plaintiffs fail to allege facts to establish that Rice or Richley knowingly "participated in" or "induced" First City to engage in any of the alleged violations. *See Dennis*, 918 F.2d at 509; *see also* Hemming v. Alfin Fragrances, Inc., 690 F. Supp. 239, 245 (S.D.N.Y. 1988) ("The

0884490.06                                    -23-

Second Circuit has noted that this section was intended to impose liability on controlling persons 'who are in some meaningful sense culpable participants in the fraud perpetrated by controlled persons.'" (citing *Lunza v. Drexel & Co.*, 479 F.2d 1277, 1279 (2d Cir. 1973) (en banc)).  Plaintiffs do not allege that either Rice or Richley knew that any particular (alleged) misstatement was false when made, knew about the alleged fraud, knowingly participated in the fraud, engaged in self-dealing, or personally profited from the alleged fraud.  Indeed, Rice was not even a director of First City, did not sign any of First City's public statements or filings, and did not prepare any of the alleged misstatements.

Instead, plaintiffs base their "control" claim against Rice and Richley solely on their status as officers and, in Richley's case, director of First City.  Paragraphs 89(c), (d), and (f) contain the identical allegations against Richley, Rice, and the "D & O Defendants":

> " . . . In either event, by his actions [each defendant Rice and Richley] participated with the other Defendants in promulgating materially false and misleading statements to the investing public.  Moreover, ***by virtue of his positions, [each defendant] was a "controlling person"*** of First City within the meaning of Section 15 of the Securities Act.  (emphasis added)
>
> In addition, ***[each defendant] was a controlling person*** within the meaning of Section 20(a) of the Exchange Act ***by virtue of his position*** as [Chief Operating Officer and a director of First City/Executive Vice President and Chairman of the Credit Policy Committee of First City] during the Class Period, and is therefore liable as a controlling person under the Exchange Act.  (emphasis added)

However, courts have consistently rejected this basis for plaintiffs' control claims.  "A person's status as an officer, director or shareholder, absent more, is not enough to trigger liability" as a controlling person.  *Hemming*, 690 F. Supp. at 245; *see also Dennis*, 918 F.2d at 509 ("While Robinson was a director of New South, this status alone will not automatically cause him to be deemed a Section 15 or 20 controlling

-24-

0884490.06

person."); *Davis v. Coopers & Lybrand,* 787 F. Supp. 787, 801 (N.D. Ill. 1992) ("Thus plaintiffs allegations that the various defendants were either "principals," officers, or directors of S Funds or any other corporate entities do not suffice to establish controlling person liability.  Neither, of course, do their conclusory allegations about claimed controlling person status.") (internal citations omitted).[5/]

III.   **PLAINTIFFS FAIL TO PLEAD FRAUD WITH PARTICULARITY WITH RESPECT TO DEFENDANTS RICE AND RICHLEY AND THUS FAIL TO COMPLY WITH THIS COURT'S PRIOR ORDER AND FED. R. CIV. P. 9(b).**

A.     **Plaintiffs Fail to Comply With This Court's Prior Order.**

Despite being long-winded, the Seventh Amended Complaint should also be dismissed for failure to plead fraud with particularity, as required by this Court's Order and Fed. R. Civ. P. 9(b).  *See Urcarco,* 148 F.R.D. at 566 ("One wonders how a pleading, the textual portion of which covers seventy-four pages, could use so many words yet say so little that is really firmly, factually grounded.").  By Order of March 26, 1991, this Court ordered plaintiff Krim to file a sixth amended complaint "expressly satisfying the particularities required to establish a claim for securities fraud and for claims under the Securities Act of 1933 or the Securities Exchange Act of 1934."  The Court specifically admonished the plaintiff "to be mindful of FRCP 11 in this instance."  *Id.*  But the Seventh Amended Complaint (like the Sixth Amended Complaint) fails to comply with this Order.  The instant Complaint alleges the same vague and conclusory allegations

---

[5/]Additionally, plaintiffs appear to allege that the D&O defendants participated in promulgating the allegedly false First City statements by "subverting [Arthur Andersen's] independence by giving AA an enormous amount of consulting work." Complaint ¶¶ 74-76.  The Fifth Circuit has already rejected this argument outright. *See Melder*, 27 F.3d at 1103 ("An accountant's greatest asset is its reputation for honesty, followed closely by its reputation for careful work.  Fees for two years' audits could not approach the losses [the accounting firm] would suffer from a perception that it would muffle a client's fraud.") (*citing DiLeo v. Ernest & Young*, 901 F.2d at 629).

-25-

ClibPDF - www.fastio.com

that this Court found to be deficient in the Fifth Amended Complaint.  Compare, for example:

<u>Fifth Am. Cmplt.</u> *with* <u>Seventh Am. Cmplt.</u>

| | Fifth Am. Cmplt. | | Seventh Am. Cmplt. |
|---|---|---|---|
| ¶ | 19 | ¶ | 38 |
| ¶¶ | 20-21 | ¶¶ | 43-44 |
| ¶ | 23 | ¶¶ | 45-46 |
| ¶ | 23 | ¶ | 51 |
| ¶ | 24 | ¶ | 54 |
| ¶ | 26(a)-(f) | ¶ | 53(a)-(f) |
| ¶ | 27 | ¶ | 66 |
| ¶ | 28 | ¶ | 67 |

The language in the above paragraphs of the Fifth and Seventh Amended Complaints is almost, if not virtually, identical.  Indeed, the Seventh Amended Complaint contains no additional information regarding Rice and Richley.  *Cf.* Fifth Am. Cmplt. ¶¶ 30(b) & (d); Fifth Am. Cmplt. ¶¶ 89(c) & (d).

## B.    The General Requirements of Fed. R. Civ. P. 9(b).

Moreover, the Seventh Amended Complaint fails to satisfy the requirements of Rule 9(b).  Rule 9(b) provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Courts have been "especially vigorous" in applying Rule 9(b) to securities fraud suits. *Romani v. Shearson Lechman Hutton*, 929 F.2d 875, 878 (1st Cir. 1991); *see also Blue Chip Stamps v. Manor Drugs*, 421 U.S. 723, 739-41 (1975) ("Litigation under Rule 10b-5 presents a danger of vexatiousness different in degree and in kind from that which accompanies litigation in general."). "The heightened pleading standard of Rule 9(b) serves an important screening function in securities fraud suits." *Melder*, 27 F.3d at 1100. Rule 9(b) "provides defendants with fair notice of the plaintiffs' claims, protects defendants from harm to their reputation and goodwill, reduces the number of strike

0884490.06

suits, and prevents plaintiffs from filing baseless claims and then attempting to discover unknown wrongs." *Id.* (internal quotation and citation omitted).

To satisfy Rule 9(b), the plaintiff must identify:

(1)     precisely what statements were made in what documents or oral representations or what omissions were made, and

(2)     the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) the same,

(3)     the content of such statements and the manner in which they misled the plaintiff, and

(4)     what the defendants obtained as a consequence of the fraud.

*Guidry v. Bank of LaPlace*, 740 F. Supp. 1208, 1216 (E.D.La. 1990), *aff'd in part and rev'd in part on other grounds*, 954 F.2d 278 (5th Cir. 1992).  In short, "[t]his means the who, what, when, where, and how:  the first paragraph of any newspaper story." *DiLeo*, 901 F.2d at 627.

Further, while Rule 9(b) does allow scienter to be averred in general terms, it is not sufficient simply to allege that a defendant acted with fraudulent intent. "[P]laintiffs are still required to plead the factual basis which gives rise to a 'strong inference' of fraudulent intent." *Wexner v. First Manhattan Company*, 902 F.2d 169, 172 (2d Cir. 1990) (citation omitted).  Specifically, "[t]he time, place, and nature of the misrepresentations must be set forth so that the defendant's intent to defraud, to employ any scheme or artifice to defraud, to make any untrue statement of a material fact, or to engage in any act or course of business that would operate as a fraud under the securities laws is revealed." *Ross v. Bolton*, 904 F.2d 819, 823 (2d Cir. 1990) (citations omitted).

Moreover, Rule 9(b) requires that the complaint set forth with particularity the elements of securities fraud *separately* for each defendant. "[G]eneral allegations, which

-27-

lump all defendants together failing to segregate the alleged wrongdoing of one from those of another do not meet the requirements of Rule 9(b)." *Urcarco,* 148 F.R.D. at 569; *see also Thornton,* 878 F. Supp. at 938 ("Where multiple defendants must respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."); *Unimobil 84, Inc. v. Spurney,* 797 F.2d 214, 217 (5th Cir. 1986) (Plaintiffs' "general allegations, which do not state with particularity what representations each defendant made, do not meet this requirement.").

### C.   The Seventh Amended Complaint Completely Fails To Plead Fraud With Particularly With Respect To Defendants Richley and Rice.

As discussed above, plaintiffs fail to plead any facts supporting their claims that defendants Rice and Richley acted with scienter in allegedly violating the securities laws.  The only two paragraphs addressing Rice and Richley's scienter consist entirely of conclusory allegations.  Complaint ¶ 89(c) & (d) (Alleging that Rice and Richley each "either approved the promulgation and dissemination of those documents with knowledge that they contained the materially false and misleading statements or recklessly failed to investigate the contents of the documents being promulgated and disseminated by First City.").   Further, those paragraphs fail to identify which particular statements were made by Rice and Richley, nonetheless why Rice and Richley knew those statements were allegedly false when made.  It is well established that such "rote conclusory allegations that the defendants 'knowingly did this' or 'recklessly did that' fail to meet the heightened pleading requirements of Rule 9(b)." *Lovelace*, 78 F.3d at 1019; *see also Urcarco,* 148 F.R.D. at 567 (dismissing securities fraud complaint because it "is characterized by rote repetition of buzzwords taken from the pertinent statutes and rules."); *Thornton*, 878 F. Supp. at 938 ("The Plaintiffs' usual practice is simply to state that the Defendants knowingly did this and recklessly disregarded that.

0884490.06

Conspicuously absent are facts indicating that the Defendants' statements were false or materially misleading.").

> **D.    Plaintiffs' Fleeting and Vague References to Statements By the "Defendants" Fail to Satisfy Rule 9(b).**

Nor does the rest of the Seventh Amended Complaint plead fraud with particularly, as required by Rule 9(b).  Of course, because the vast majority of the allegations refer only to the "defendants" or occasionally the "O&D defendants," those allegations must be dismissed out of hand.  They "lump all the defendants together," rather than setting forth the facts for each defendant separately.  *See Urcarco*, 148 F.R.D. at 569; *Thornton*, 878 F. Supp. at 938; *Unimobil 84, Inc.*, 797 F.2d at 217.

But even putting this fact aside, the Seventh Amended Complaint still fails to plead fraud with particularity.  Although the complaint makes fleeting and vague references to statements in First City's quarterly reports, annual reports, Forms 10-K, and the 1988 Proxy Statement/Prospectus, those references do not disguise the fact that plaintiffs fail to satisfy Rule 9(b).  Plaintiffs fail to analyze how each statement is allegedly false or misleading and fail to explain why each particular defendants knew the statement was allegedly false at the time it was made.  *See Williams v. WMX Tech.*, 112 F.3d 175, 179 (5th Cir. 1997) (reversing district court's refusal to dismiss Complaint in an interlocutory ruling because "[t]he amended complaint merely excerpts the prospectus and provides no analysis of its contents or falsity."); *In re Mobile Telecommunication Technologies Corporation Securities Litigation*, 915 F. Supp. 828, 832 (S.D. Miss. 1995) (dismissing securities fraud suit under Rule 9(b) because "plaintiffs list a number of statements uttered by and about [defendant] Mtel throughout 1993; then, as support for each of their various claims, they conclude that *all* of the public statements by defendants referenced in the complaint were materially

false, misleading, or lacked a reasonable basis when made.") (emphasis in original); *Melder*, 27 F.3d at 1100 (dismissing securities fraud complaint because it only "selectively distort[s] the company's public statements to create an inference of fraud.").

Noticeably absent from the complaint are specific facts explaining why the statements were misleading and demonstrating that each specific defendant knew the statements were (allegedly) fraudulent when made. The complaint alleges no facts supporting that the HLT's involved in First City's loan transactions were unreasonably risky or that the defendants knew the loans required greater loan loss reserves. And there are no facts indicating in any way that each specific defendant's belief in First City's future profitability was less than sincere at the time the statements were made. Instead, all the plaintiffs do is selectively extract statements from First City's annual reports, quarterly reports, Forms 10-K and 1988 Proxy Statement/Prospectus, attempt to negate their validity almost a decade later, and then label the statements as fraudulent and misleading.

But as numerous courts have recognized, that is not enough to satisfy Rule 9(b). For example, the court in *Dubowski v. Dominio Bankshares Corp.*, 763 F. Supp. 169, 172 (W.D. Va. 1991) dismissed a securities fraud suit like the instant one based on a bank's bad loans and inadequate loan loss reserves. The court explained:

> The plaintiffs in the instant case fail to plead the "how." ***How did defendants know the loan loss reserves were inadequate? How did defendants know certain accounts were not to be collected?*** Plaintiffs repeatedly make bold assertions of misrepresentations and omitted facts -- but do not claim facts to explain why the statements are misrepresentations. ***Why were the statements false when made, and how were defendants to know? In hindsight, the reserves were not adequate, but this is not necessarily fraud. Indeed, this does not even imply fraud.*** (emphasis added).

*See also Tuchman v. DSC Communications Corp.*, 818 F. Supp. 971, 977 (N.D. Tex. 1993), *aff'd*, 14 F.3d 1061 (5th Cir. 1994) (dismissing securities fraud complaint because

-30-

0884490.06

it "basically recites a series of financial reports, press releases and other information available to the public and then alleges that these were all false and misleading and were made with knowledge or reckless disregard of their false nature or misleading qualities."); *Todd v. Oppenheimer & Company, Inc.* 78 F.R.D. 415, 423 (S.D.N.Y. 1978) (dismissing securities fraud claims under Rule 9(b) because the plaintiffs "identify only vague promises and general categories of investment mismanagement.   There is no inclusion of who specifically made the representations, when, where, in what form or the *facts* misrepresented.") (emphasis in original; citations omitted).

### E.    The Seventh Amended Complaint's Allegations Against All the "Defendants" Fail to Allege Scienter With Particularity.

Similarly, the Seventh Amended Complaint's allegations against the "defendants" fails to allege scienter with particularity.  Plaintiffs' allegations are wholly conclusory. The complaint states:

> ¶ 88: ***The Defendants made material false representations knowingly or recklessly*** in order to inflate the market price of the stock of First City and to retain their various positions at First City and the emoluments thereof.  In reliance upon the Defendants' materially false representations and in reliance upon the integrity of the marketplace that was distorted by their misrepresentations and nondisclosures, the Plaintiffs and other members of the Class purchased First City securities at prices far in excess of their true value. . . . (emphasis added).

> ¶ 89(f): . . . "The D&O Defendants either approved the promulgation and dissemination of those documents ***with knowledge that they contained the false and misleading statements or recklessly failed*** to investigate the contents of documents being promulgated and disseminated by First City.  In either event, by their actions the D&O Defendants participated with the other Defendants in promulgating materially false and misleading statements to the investing public. (emphasis added).

Such boilerplate accusations are insufficient to infer any fraudulent intent by any defendant.  None of these allegations sets forth any facts that any defendant knew the statements were allegedly false when made.  Lacking such details, plaintiffs completely

-31-

0884490.06

fail to satisfy Rule 9(b). *Whalen v. Carter*, 954 F.2d 1087, 1098 (5th Cir. 1992) ("Conclusory allegations of securities fraud are insufficient to avoid dismissal."); *see also Melder*, 27 F.3d at 1102-03 ("[P]laintiffs' complaint fails to provide the specific facts upon which an inference of conscious behavior may be based. As the district court put it, '[t]he complaint's usual practice is simply to state that the defendants knowingly did this or recklessly did that.'")

### F.     Fifth Circuit Courts Routinely Dismiss Securities Fraud Complaints Under Rule 9(b).

When confronted with similar accusations of securities fraud, Fifth Circuit courts, as well as other circuits, have not hesitated to dismiss the plaintiffs' claims for failing to satisfy Rule 9(b). *E.g.*, *Williams*, 112 F.3d at 176 ("We find that the amended complaint failed to allege fraud with particularity, reverse the order of the district court, and remand with instructions to dismiss."); *Melder*, 27 F.3d at 1099 ("After allowing the plaintiffs to replead twice and conducting a hearing on this matter, the district court dismissed the securities fraud and common law fraud claims for failure to plead fraud with particularity as required under Fed. R. Civ. P. 9(b). We have reviewed the court's dismissal on the pleadings *de novo* and AFFIRM."); *Lovelace*, 78 F.3d 1015; *Tuchman*, 14 F.3d 1061; *Smith v. Ayres*, 845 F.2d 1360 (5th Cir. 1988); *Summer v. Land & Leisure, Inc.*, 664 F.2d 965, 971 (5th Cir. 1981), *cert. denied*, 458 U.S. 1106 (1982); *In re Mobile Telecommunication Technologies*, 915 F. Supp. at 828; *Guidry*, 740 F. Supp. 208; *Urcarco*, 148 F.R.D. at 569; *Thornton*, 878 F.Supp. at 938.

0884490.06

ClibPDF - www.fastio.com

## IV. PLAINTIFFS' RELATED TEXAS STATE LAW CLAIMS SHOULD BE DISMISSED WITH PREJUDICE UNDER FED.R.CIV.P. 12(B)(6) AND 9(B).

### A. This Court Should Exercise Its Discretion To Address Plaintiffs' State Law Claims and Dismiss Them With Prejudice.

This Court should dismiss the plaintiffs' state law claims with prejudice on the same grounds as the federal law claims. Initially, this Court has the inherent power to address the merits of plaintiffs' state law claims even if it dismisses the federal law claims with prejudice, and should exercise its pendent jurisdiction in the instant case. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that district court has the inherent authority to address the merits of pendent state law claims and should exercise jurisdiction over state law claims if it is in the interests of judicial economy, convenience, and fairness). "The trial courts were told [in *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)] that they should look to 'considerations of judicial economy, convenience and fairness to litigants' in exercising their discretion . . . ." Wright & Miller, 13B *Federal Practice & Procedure*, § 3567.1, pp. 123-27. "[T]here are a significant number of cases in which state claims have been retained and decided even though the federal claim was dismissed before trial." *Id.* at 133-36 (collecting cases).

It is in the interests of justice and judicial economy for this Court to address the merits of the state law claims and dismiss them with prejudice. The plaintiffs have already had eight opportunities to amend their complaint to attempt to state a viable cause of action. They should not be given a ninth opportunity to start their state law claims over from the beginning in state court. *See Shushany*, 992 F.2d at 519-20 (affirming dismissal with prejudice of an entire action for failure to state federal securities and state law claims).

0884490.06

-33-

### B.     Plaintiffs Fail to State a Claim For Violations of Tex.Bus. & Comm. Code § 27.01 and Common Law Fraud/Misrepresentation.

None of the plaintiffs' state law claims has any merit.  First, plaintiffs fail to state a claim for violations of Tex. Bus. & Comm. Code § 27.01 and for common law fraud/misrepresentation.   Both § 27.01 and common law fraud contain the same elements. *Davis v. Grammer*, 727 S.W.2d 18, 23 (Tex. App.—San Antonio, 1987), *rev'd on other grounds*, 750 S.W.2d 766 (Tex. 1988); *Haralson v. E.F. Hutton*, 919 F.2d 1014, 1025 n.4 (5th Cir. 1990) (Section 27.01 "is derived from Texas common law fraud"). And like securities fraud, fraud under Texas law requires:   "(1) that a material representation was made; (2) that it was false; (3) that, when the speaker made it, he knew it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by the party; (5) that the party acted in reliance upon it; and (6) that he thereby suffered injury." *Trenholm v. Ratcliff*, 646 S.W.2d 927, 930 (Tex. 1983).  Plaintiffs' Texas law allegations of fraud must also satisfy the requirements of Rule 9(b). *Decker*, 798 F. Supp. at 1177 (Rule 9(b) "applies not only to fraud actions under federal statutes, but to fraud claims based on state law.").

Plaintiffs fail to state a claim for Texas law fraud and under § 27.01 for the same reasons that they fail to state a claim for securities fraud.  As discussed above, plaintiffs have not pled that defendants made any misrepresentation; that the alleged misrepresentation was material in light of its context; or that Rice or Richley or any other defendants knew that the alleged misstatements were false or misleading when made.  Additionally, plaintiffs fail to plead their fraud claims with particularity and thus should be dismissed pursuant to Rule 9(b).

0884490.06

**C.** **Plaintiffs' Claims For Breach of Fiduciary Duty, Self Dealing, and Respondeat Superior Fail to State a Claim Upon Which Relief Can Be Granted.**

Plaintiffs do not appear to allege claims for breach of fiduciary duty, self-dealing, and respondeat superior against Rice and Richley. But in any case, plaintiffs fail to state a claim for breach of fiduciary duty, self-dealing, and respondeat superior against any defendant. All three counts allege causes of action for breach of fiduciary duty to First City's shareholders. *See Gearhart Industries, Inc. v. Smith International, Inc.*, 741 F.2d 707, 719-20 (5th Cir. 1984) (self dealing is a form of breach of fiduciary duty; applying Texas law). But corporate directors' and officers' fiduciary duties "run to the corporation, not to individual shareholders or even to a majority of the shareholders." *Id.* at 721 (citing 15 Tex. Jur. 3d, *Corporations*, §§ 165-171 (1981)). "Accordingly, a cause of action for breach of directors' fiduciary duties belongs to the corporation and cannot be brought by a stockholder in his own right . . . ." *Id.* Thus, plaintiffs lack standing to bring the instant direct claims for breach of fiduciary duty. *Id.*

**D.** **Plaintiffs Fail to State a Claim For Negligent Misrepresentation.**

Finally, plaintiffs fail to state a claim for negligent misrepresentation against defendants Rice or Richley or any other defendants. First, to establish liability for negligent misrepresentation, the plaintiff must show that he is a "member of a 'limited group' of persons for whose benefit and guidance the defendant either intends to supply the information or knows that the recipient intends to supply it." *Scottish Heritable Trust v. Peat Marwick Main & Co.*, 81 F.3d 606, 612 (5th Cir. 1996) (applying Texas law), *cert. denied*, 118 S. Ct. 412 (1997). The Fifth Circuit has held that potential purchasers of stock -- even a potential purchaser of a company's stock are not members

-35-

0884490.06

of such a 'limited group.'" *Id.* at 612-14. Plaintiffs thus fail to state a claim upon which relief can be granted.

Second, plaintiffs fail to allege that defendants made an allegedly *false* misstatement of *fact*. *See Continental Savings Assoc. v. Collins*, 814 S.W.2d 829, 833-34 (Tex. App.—Houston [14th Dist.] 1991, no writ) (information must be false, not merely allegedly misleading); *Airborne Freight v. C.R. Lee Enterprises,* 847 S.W.2d 289, 294 (Tex. App.—El Paso, 1992, writ denied) (defendant must make a misrepresentation of an *existing fact*). As discussed above, plaintiffs do not allege that any statements made by defendants were false on their face. Plaintiffs do not allege, for example, that defendants falsely stated First city's actual profits, actual loan loss reserves, or actual loan losses. Further, none of defendants' alleged misstatements constituted facts. As set forth above, defendants' statements regarding First City's loan loss reserves, the success of the Collecting Bank, and First City's future prospects constitute predictions and opinions about future events—not statements of existing fact.

## CONCLUSION

For the foregoing reasons, defendants Rice and Richley respectfully assert that all claims against them in the Seventh Amended Complaint should be dismissed with prejudice.

Respectfully submitted,

Richard N. Carrell
State Bar No. 03871000
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone (713) 651-5151
Telecopy (713) 651-5246

0884490.06

                                        ATTORNEY-IN-CHARGE FOR DEFENDANTS
                                        ROBERT RICE AND ROBERT D. RICHLEY

OF COUNSEL:

    Daniel M. McClure
    State Bar No. 13427400
    Kathleen Rose
    State Bar No.00798473
FULBRIGHT & JAWORSKI, L.L.P.
1301 McKinney, Suite 5100
Houston, Texas  77010
Telephone (713) 651-5151
Telecopy (713) 651-5246


                        CERTIFICATE OF SERVICE


        I hereby certify that a true and correct copy of the above and foregoing pleading
has been served upon all counsel of record on this __30__ day of January, 1998.


                        _____
                                Richard N. Carrell


ClibPDF - www.fastio.com

0884490.06                          -37-